UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ANTHONY VELLA,<br><br>           Plaintiff,<br><br>     v.<br><br>EDGAR CLARK, et al.,<br><br>           Defendants. | Case No.: 1:12-cv-01402-SAB (PC)<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS IDENTIFIED HEREIN<br><br>THIRTY-DAY DEADLINE |

Plaintiff John Anthony Vella is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff initiated the instant action on August 27, 2012. On September 27, 2012, pursuant to 28 U.S.C. § 636(c), Plaintiff consented to the jurisdiction of the United States Magistrate Judge. Local Rule 302.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## PLAINTIFF'S COMPLAINT

On September 23, 2010, Plaintiff inadvertently rammed his left foot on the solid concrete block corner of the prison cell bunk in which he was assigned resulting in a broken toe.

On this same date, Plaintiff was examined by Licensed Vocational Nurse (LVN) Tassie who requested that Plaintiff be sent to the Facility Emergency Room.

The on-call doctor at John D. Klarich Hospital inspected Plaintiff's left foot and determined the severity of the injury was beyond the capabilities of the hospital to treat. Therefore, at approximately 9:30 p.m., it was ordered for Plaintiff to be sent to the emergency room at the San Joaquin Valley Hospital (SJVH) in Bakersfield, California.

On September 24, 2010, at approximately 3:24 a.m., Plaintiff arrived and was admitted at SJVH and evaluated by Dr. Dale D. Stewart. Dr. Stewart ordered a high resolution x-ray of Plaintiff's

1  left foot, which revealed that Plaintiff suffered a displaced radial fracture of the left fifth medicarpal.
2  Plaintiff's foot was so impacted that it had broken a joint, which caused severe dislocation.
3  Plaintiff's dislocation was so severe that his left toe was hanging off the side of his foot.

4  On September 24, 2010, at approximately 4:59 a.m., Dr. Stewart, set Plaintiff's break and
5  massaged the bone back into place, issued pain medication, and released Plaintiff back to the facility.
6  Dr. Stewart also ordered the use of a wheel chair, not to walk on the foot, and to return at a later date
7  for placement of a cast once the swelling went down.

8  Upon Plaintiff's return to the prison facility, officers forcibly took Plaintiff's assigned wheel
9  chair, and forced him to walk, unaided by crutches, walker, or personal assistance, to enter Plaintiff's
10 assigned cell. Despite Plaintiff's protest, his request for use of a mobility device was unanswered.

11 Plaintiff's mobility issues persisted for the next six to seven days, despite Plaintiff's requests to
12 correctional and medical staff of his need for a mobility device.

13 LVN D. Tassie, made attempts on behalf of Plaintiff to obtain a medical mobility device. She
14 contacted her supervisor on two separate occasions, and the supervisor failed in her duties.

15 On September 29, 2010 through October 13, 2010, Plaintiff was forced to walk on his broken
16 foot. Due to not having a mobility device, further injury resulted.

17 On September 30, 2010, Plaintiff was examined by Family Nurse Practioner (FNP), M. Dhah,
18 who prescribed crutches. However, Chief Medical Officer (CMO) Edgar Clark, refused to authorize
19 the order until October 13, 2010. At that time, Plaintiff was ordered to pay $16.75 for a pair of used,
20 damages, and unsanitary crutches. LVN, Jarrod Robbins, protested to CMO Clark, the issuance and
21 use of the crutches because of the poor condition.

22 On October 13, 2010, correctional officer Hamilton, also protested the assignment of the used
23 crutches, and provided Plaintiff with use of a wheel chair.

24 Because Plaintiff was forced to walk on his broken foot, further injury resulted to his foot
25 affecting the healing process causing a deformity in his foot.

26 On October 20, 2010, Dr. Leiberstein diagnosed Plaintiff's foot and immediately ordered him
27 to be transported to the facility hospital via a wheel chair. An x-ray was conducted and examined by
28 Dr. Ulit which revealed that Plaintiff's foot was healing wrong.

Within a couple days after the x-ray, Plaintiff was examined by Orthopedic Specialist, Dr. Young Paik, who ordered Plaintiff to "stay off" the broken and injured foot. He ordered pain medication and emergency surgery in order to re-break the foot to perform a flangial reduction to the fifth medicarpal and joint, and place a rod in the toe.

In December 2010, Dr. Young Paik made his first attempt for corrective treatment of Plaintiff's broken foot. However, the procedure was cancelled by Dr. Paik's office.

On January 5, 2011, Plaintiff was transported to Mercy Hospital in Bakersfield, California. Dr. Young Paik performed a second operation on Plaintiff's foot. Dr. Liberstein and Dr. Ulit ordered post-surgery pain medication in the form of Tylenol and Morphine.

On January 20, 2011, because Plaintiff did not have access to a mobility device, he fell while in the toilet area of his cell. The cast became wedged between the metal toilet and concrete wall, resulting in Plaintiff losing balance and falling hard on the concrete floor, causing re-injury of his foot.

On this same day, Plaintiff was examined by LVN Osunde, who merely noted swelling at the knee and blood in the cast. Osunde notified CMO Edgar Clark, who refused to order Plaintiff's transport to the emergency room.

On January 21, 2011, Plaintiff was interviewed by Dr. Norman and was ordered to be sent to the emergency room. On this same day, an x-ray was conducted by Dr. Kim and Dr. Ulit. Both doctors observed that Plaintiff bent the metal rod in his foot and tore the skin around the entry spot causing bleeding profusely. Neither doctors could provide Plaintiff any treatment other than the pain medication already prescribed, as it was outside their scope of treatment.

On January 24, 2011, Plaintiff was again taken to the emergency room and examined by Dr. Young Paik. Dr. Paik removed the cast and removed the bent rod. Dr. Paik ordered that Plaintiff be returned for complete cast removal and a possible replacement cast to avoid infection. However, the medical order by Dr. Paik was never honored by prison staff.

On January 26, 2011, CMO Edgar Clark ordered LVN Gray to refuse to provide Plaintiff the pain medication that was prescribed two days prior.

///

///

On February 7, 2011, Dr. Noman issued an urgent "cast removal order" and contacted CMO Clark and Dr. McCabe for assistance. The same order was issued again by Dr. Norman two days later on February 9, 2011.

On February 16, 2011, FNP Kaur submitted an order to remove the cast because the prior two orders were denied.

On February 22, 2011, FNP Dhah, submitted an order to remove the cast.

On March 7, 2011, Dr. Noman again submitted an "urgent" order to remove the cast.

On March 14, 2011, Plaintiff was transported to Dr. Paik's office, approximately 48 days after the initial order was issued. Due to Dr. Paik's apparent agitation and frustration with prison and medical staff, he quickly removed the cast and then stated "leave, that is all I'm going to do, we are now done here take him back to Corcoran Hospital for treatment." Dr. Paik refused to inspect the wound and injury for infection, and failed to clean the wound despite the horrible smell.

When Plaintiff was transported back to the prison he was placed directly into his cell without examination by any medical staff despite the apparent infection on his foot.

On March 21, 20112, Plaintiff was examined by FNP Dhah who prescribed Ciproflaxen to treat the infection.

On April 11, 2011, Plaintiff was reviewed by Dr. Bob Barr, who noted the severe infection on Plaintiff's foot and contacted CMO Clark as to Plaintiff's medical needs. Dr. Barr subsequently contacted CMO Clark again on April 14, and April 20, 2011.

CMO Clark cancelled any and all further treatment for Plaintiff, despite Dr. Barr's notation on September 15, 2011, describing "deep lesions on plaintiff's foot and the draining of puss." Plaintiff also had rotting on the flesh due to the failure to treat the injuries which has resulted in permanent damage and severe pain in the foot.

Plaintiff was reviewed by Dr. Williams, at U.C. Davis Medical Center, who listed Plaintiff's injury and pain as 100 percent permanent.

Plaintiff was also reviewed by Dr. Deutinger and Dr. Ruff, pain management specialists, and both noted that due to the failure to properly treat Plaintiff's injury, resulted in permanent pain and the need for permanent pain management care and medication.

On January 26, 2012, Plaintiff was reviewed by the prison's pain management committee which consisted of Doctors Ruff, Barr, Wang and Clark, who placed Plaintiff on pain management due to the severity of his foot injury. However, Plaintiff is still in need of pain management therapy.

### III.

### DISCUSSION

**A.     Deliberate Indifference to Serious Medical Need**

For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012 (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. Hutchison v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

The existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and/or the existence of chronic or substantial pain are indications of a serious medical need. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

Plaintiff's allegations are sufficient to show that he had a serious medical need. Id.; Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994). While a mere disagreement with the course of treatment chosen by prison medical staff, including a disagreement with the decision to prescribe medications different than those recommended by medical staff, does not support a claim under section 1983, Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989), the Court finds that Plaintiff has sufficiently alleged that the delay and refusal to

treat Plaintiff's medical condition was not sufficient to address his medical needs.  Accordingly, Plaintiff's states cognizable claims against Defendant CMO Clark for delay and failure to provide adequate care, Defendant Dr. Paik for failure to provide adequate care for his refusal to inspect Plaintiff's wound for infection leading to permanent injury, and Defendant LVN Gray who refused to provide pain medication.

As to Defendant Dr. Ulit, the only facts alleged in the complaint state that after an x-ray was examined and it was noted that the metal rod in Plaintiff's foot was bent, Dr. Ulit could not provide any medical because it was beyond the scope of authorized treatment, fail to demonstrate that he knew of and disregarded an excessive risk to a serious medical need.

As to Defendant LVN Osunde, Plaintiff contends that after examination it was merely noted there was swelling at the knee and blood in the cast.  However, Plaintiff indicates that Osunde notified CMO Clark, who refused to transport Plaintiff to the emergency room.  These factual allegations fail to demonstrate that Defendant Osunde violated Plaintiff's constitutional right to adequate medical attention.

Plaintiff alleges no facts to link Defendants T. Macias, L.D. Zamora, L. Salinas, S. Ramsey, S. Macellvaie, G. Thiel, and Okeari, showing that they knew of and disregarded an excessive risk to Plaintiff's serious medical need.

### B. Supervisory Liability

Plaintiff names CMO McCabe as a Defendant in this action.  Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct.  Iqbal, at 1948-49.  A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

1 Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory
2 liability claim against CMO McCabe. The only basis for such a claim would be respondeat superior,
3 which is precluded under section 1983.

**C.     Inmate Appeals Process**

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Thus, prison officials are not liable for a due process violation for simply failing to process an appeal properly or failing to find in Plaintiff's favor.

The complaint does not state a claim for deliberate indifferent to a serious medical need against any of the named Defendants who allegedly denied or handled Plaintiff's inmate appeals, as Plaintiff alleges not facts to demonstrate their involvement in his medical care. The mere allegation that certain Defendants were involved in resolving Plaintiff's inmate appeal, without more, does not constitute deliberate indifference.

**D.     Due Process Claim**

Plaintiff alleges due process and equal protection claims, but he has not set forth any facts demonstrating that he was deprived of a protected liberty interest without procedural due process. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To the extent that Plaintiff is attempting to allege a substantive due process claim, the concept of substantive due process is expanded only reluctantly and if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision rather than under the rubric of substantive due process.[1]

---

[1] "The concept of substantive due process . . . forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (citation and internal quotation marks omitted).

### E. Equal Protection Claim

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class.  Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

Although Plaintiff alleges an equal protection violation, his complaint is devoid of any facts which would support a claim that Defendants intentionally and arbitrarily discriminated against him. Accordingly, Plaintiff's equal protection claim fails.

### F. Failure to Comply with Prison Regulations

To state a claim against a particular defendant for violation of his civil rights under 42 U.S.C. § 1983, plaintiff must allege that the defendant deprived him of a right guaranteed under the Constitution or a federal statute.  See West v. Atkins, 487 U.S. 42, 48 (1988); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir. 1988).  As previously noted, "[a] person deprives another 'of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743) (9th Cir. 1978) (emphasis in original).

Plaintiff's allegations that prison officials failed to comply with state law or prison regulations do not give rise to a federal civil rights claim.

## IV.
## CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable claim against Defendants CMO Clark, Dr. Paik, and LVN Gray for deliberate indifference to a serious medical need in violation of the Eighth Amendment. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing

the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claim for excessive force against Defendants CMO Clark, Dr. Paik, and LVN Gray, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and Defendants, and will forward Plaintiff three (3) summons and three (3) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded

pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants CMO Clark, Dr. Paik, and LVN Gray for deliberate indifference to a serious medical need; and
3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **November 18, 2013**

UNITED STATES MAGISTRATE JUDGE